Slip-Op 11-82
UNITED STATES COURT OF INTERNATIONAL TRADE

```
_____
                                 :
ARCELORMITTAL STAINLESS          :
BELGIUM N.V.,                    :
                                 :
            Plaintiff,           :
                                 : Before: Richard K. Eaton, Judge
       v.                        :
                                 : Court No. 08-00434
UNITED STATES,                   :
                                 :
            Defendant,           :
                                 :
      and                        :
                                 :
ALLEGHENY LUDLUM                 :
            Def.-Int.            :
_____:
```

OPINION

[The Department of Commerce's results of redetermination pursuant to remand are sustained.]

Dated: July 12, 2011

*Shearman & Sterling LLP* (*Robert LaRussa and Bryan Dayton*), for plaintiff ArcelorMittal Stainless Belgium N.V.

*Tony West*, Assistant Attorney General; *Jeanne E. Davidson*, Director, *Patricia M. McCarthy*, Assistant Director, Commercial Litigation Branch, Civil Division, United States Department of Justice (*Stephen C. Tosini*); Office of Chief Counsel for Import Administration, U.S. Department of Commerce, *Daniel J. Calhoun*, of counsel, for defendant.

*Kelley Drye & Warren, LLC* (*David Hartquist and Jeffrey S. Beckington*), for defendant-intervenor Allegheny Ludlum Corporation.

Eaton, Judge: Before the court is plaintiff ArcelorMittal

Stainless Belgium's ("ASB" or "plaintiff") challenge to the

Department of Commerce's (the "Department" or "Commerce") Final

Results of Redetermination Pursuant to Remand, dated July 29,
2010 (the "Remand Results").  This matter originally came before
the court on plaintiff's challenge to Commerce's final scope
ruling issued on December 3, 2008 concerning stainless steel
plate in coils ("SSPC") from Belgium.  See SSPC from Belgium:
Final Scope Ruling, A-423-808 (Dep't of Commerce Dec. 3, 2008)
(the "Final Scope Ruling").  It was remanded by order dated March
30, 2010, with instructions to Commerce to follow the three-step
methodology established by the Court of Appeals for the Federal
Circuit (the "Federal Circuit") and the Department's regulations,
for deciding scope inquiries.  *Arcelormittal Stainless Belgium
N.V. v. United States*, Court No. 08-00434, Order (March 30,
2010). For the reasons stated below, the Remand Results are
sustained.


                            BACKGROUND

     Commerce's antidumping and countervailing duty orders on
SSPC from Belgium[1] cover:

     [C]ertain stainless steel plate in coils.  Stainless
     steel is an alloy steel containing, by weight, 1.2
     percent or less of carbon and 10.5 percent or more of
     chromium, with or without other elements.  The subject
     plate products are flat-rolled products, 254 mm or over
     in width and *4.75 mm or more in thickness*, in coils,

───────────────

     [1]    Pursuant to 19 C.F.R. § 351.225(m)(2010), Commerce has
determined that the Remand Results will govern the scope of all
of the SSPC antidumping and countervailing duty orders.  Remand
Results at 1 n.1.

and annealed or otherwise heat treated and pickled or
otherwise descaled. . . .

(emphasis added).  SSPC from Belgium, Italy, and South Africa, 64
Fed. Reg. 25,288, 25,288 (Dep't of Commerce May 11, 1999) (notice
of amended final determination of countervailing duties); *See
also* Certain SSPC from Belgium, Canada, Italy, the Republic of
Korea, South Africa, and Taiwan,  64 Fed. Reg. 27,756 (Dep't of
Commerce May 21, 1999) (antidumping duty orders);  Certain SSPC
from Belgium, Canada, Italy, the Republic of Korea, South Africa,
and Taiwan,  68 Fed. Reg. 11,520 (Dep't of Commerce March 11,
2003) (notice of amended antidumping duty orders); Certain SSPC
from Belgium, Canada, Italy, the Republic of Korea, South Africa,
and Taiwan,  68 Fed. Reg. 11,524 (Dep't of Commerce March 11,
2003) (notice of amended countervailing duty
orders)(collectively, the "Orders").

On May 11, 2007, ASB filed a scope inquiry request with the
Department seeking a determination as to whether the Orders'
language covers SSPC with a nominal thickness of "4.75 mm or
more," but an actual thickness of less than 4.75 mm.  *See* Final
Scope Ruling at 2.  In the Final Scope Ruling, Commerce
determined that "4.75 mm or more in thickness" means "a nominal
thickness of 4.75 mm, that is within the dimensional tolerances
of stainless steel plate as indicated in the [American Society
for Testing Materials ("ASTM")] standards, regardless of the
actual thickness, is within the scope of these Orders."  See

Final Scope Ruling at 13.  Thus, Commerce determined that SSPC with an actual thickness of less than 4.75 mm could fall within the Orders.

On July 2, 2009, ASB filed a motion for judgment on the agency record pursuant to USCIT R. 56.2 challenging the Department's scope determination.  In response to ASB's motion, defendant the United States, on behalf of Commerce, sought a voluntary remand, acknowledging that the Department failed to follow the required methodology in interpreting the scope of the Orders.  Remand Results at 3.  The court agreed, and the matter was remanded to Commerce to further develop the agency record in a manner consistent with the Federal Circuit's decisions in *Duferco Steel Inc. v. United States*, 296 F.3d 1087 (Fed. Cir. 2002) and *Tak Fat Trading Co. v. United States*, 396 F.3d 1378 (Fed. Cir. 2005), and 19 C.F.R. § 351.225(k)(2010).  *See Arcelormittal Stainless Belgium N.V. v. United States*, Court No. 08-00434, Order (March 12, 2010); *Arcelormittal Stainless Belgium N.V. v. United States*,  Court No. 08-00434, Order, (March 30, 2010).

On remand, the Department again determined that the scope of the Orders included merchandise with a nominal thickness of 4.75 mm, but an actual thickness of less than 4.75 mm.  Remand Results at 25.  Oral argument was held on March 3, 2011.  *See* Tr. of Oral Argument (March 3, 2011) ("Oral Arg. Tr.").

STANDARD OF REVIEW

This Court must sustain a scope determination unless it is "unsupported by substantial evidence and otherwise not in accordance with law."  19 U.S.C. § 1516a(b)(1)(B)(i) (2006); *see Eckstrom Indus., Inc. v. United States*, 254 F. 3d 1068, 1071 (Fed. Cir. 2001).

DISCUSSION

I.  Legal Framework

Pursuant to 19 C.F.R. § 351.225, Commerce may initiate, either, on its own, or upon the application of an interested party, an inquiry into whether the scope of an antidumping or countervailing duty order covers particular merchandise.  It is "well established" that, in resolving scope inquiries, Commerce's interpretation of its own antidumping and countervailing duty orders is accorded "significant deference."  *See Duferco Steel Inc. v. United States*, 296 F.3d 1087, 1094-95 (Fed. Cir. 2002).  Nevertheless, "Commerce cannot 'interpret' an antidumping order so as to change the scope of that order, nor can Commerce interpret an order in a manner contrary to its terms."  *See Eckstrom Indus.*, 254 F.3d at 1072.

> The language of the order determines the scope of an antidumping duty order.  Scope orders are interpreted under 19 C.F.R. § 351.225(k) with the aid of the antidumping petition, investigation and preliminary order.  But the petition and investigation 'cannot substitute for the language in the order itself.'  The

      Federal Circuit has said that 'it is the responsibility
of the agency, not those who initiated the proceedings,
to determine the scope of the final orders.  Thus, a
predicate for the interpretive process is language in
the order that is subject to interpretation.'  The
scope of the order can be clarified but it cannot be
changed by the interpretive process.

*Tak Fat*, 396 F.3d at 1382-83 (internal citations omitted).  In

accordance with these principles, Commerce is required to follow

the three-step methodology set out by the Federal Circuit in

*Duferco* and *Tak Fat*, in resolving scope inquires.  *See Duferco*,

296 F.3d at 1096-97; *Tak Fat*, 396 F.3d at 1382-83; 19 C.F.R.

§ 351.25(k).

      Under this regime, Commerce must first analyze the language

of the order at issue to determine if it is ambiguous and,

therefore, subject to interpretation.  Second, if Commerce

determines that the language is ambiguous, it must, in accordance

with 19 C.F.R. § 351.225(k)(1),[2] then consider the history of the

proceedings, including the "descriptions of the merchandise

contained in the petition, the initial investigations, and

determinations of [Commerce] (including prior scope

---

[2]    19 C.F.R. § 351.25(k)(1) provides, in relevant part:

[I]n considering whether a particular product is
included within the scope of an order or a suspended
investigation, the Secretary will take into account the
following:

(1) The descriptions of the merchandise contained in
the petition, the initial investigation, and the
determinations of the Secretary (including prior scope
determinations) and the Commission.

determinations) and the [International Trade Commission]."

Third, if the orders are ambiguous and the factors found in

§ 351.225(k)(1) are "not dispositive," then Commerce is to

consider the so-called *Diversified Products* factors set forth in

19 C.F.R. § 351.225(k)(2), including "(i) the physical

characteristics of the product; (ii) the expectations of the

ultimate purchasers; (iii) the ultimate use of the product; (iv)

the channels of trade in which the product is sold; and (v) the

manner in which the product is advertised and displayed."  *See*

*also Diversified Products Corp. v. United States,* 6 CIT 155, 572

F. Supp. 883 (1983).[3]


II.  Commerce's Remand Results

       In an effort to apply the three-step methodology outlined

above, Commerce first concluded that the language in the Orders

was ambiguous as it did not specify whether "4.75 mm or more"

referred to "nominal" or "actual" thickness.  The Department

found that this omission rendered the Orders ambiguous because it

_____

       [3]     In *Diversified Products*, the plaintiff argued that in
clarifying the scope of an antidumping duty order, Commerce was
bound by the Customs Service's product classifications.  The
Court disagreed, holding that the Department "is responsible for
clarifying, where necessary, the scope of . . . antidumping duty
orders. . . . [I]t is equally clear that the [Department] is in
no wise obligated to follow nor is it bound by the classification
determinations of Customs when it does clarify the scope of a
dumping finding."  *Diversified Products*, 6 CIT at 160, 572 F.
Supp. at 887.

is the industry practice to define SSPC thickness nominally.

According to the Department:

> [O]ur experience administering the SSPC orders is that
> the application of scope dimension measurements is
> largely based upon the underlying industry practice.
> Stainless steel plate thickness cannot be maintained
> precisely in the steel forming process.  For this
> product, the limitation of the machinery producing it,
> or further processing it, affects the accuracy of the
> dimensions.  Thus, . . . the ASTM standard lists
> specific thicknesses and permitted variations for
> acceptable tolerance ranges in thickness.  Hence, even
> if a customer orders SSPC with a nominal thickness of
> 4.75 mm or more, the customer will accept SSPC with an
> actual thickness that is less than 4.75 mm provided it
> is within the thickness tolerance range, which is
> consistent with the meaning of the term "nominal" which
> means "in name only". . . . Thus, based upon the
> language of the scope, which does not include the terms
> "actual" or "nominal" and whose understanding is
> informed by Department practice of taking into account
> product definitions and industry practice to interpret
> scope language, we are unable to make a definitive
> finding based on the language of the scope.

Remand Results at 7-8 (internal citations omitted).

Having determined that the language of the Orders was
ambiguous, Commerce next considered each of the factors set forth
in § 351.225(k)(1).  Ultimately, the Department concluded that
none of the factors under this subsection were dispositive.  In
reaching its conclusions, Commerce first found that the petitions
were not conclusive "[b]ecause the scope description in the
petition and the notice of initiation does not indicate whether
thickness is to be measured on a nominal or actual basis."
Remand Results at 9.

The Department next found that its determinations during the

initial investigation and subsequent administrative reviews were
not dispositive because "[t]he Department has never made an
explicit finding in its prior determinations that the scope of
its proceedings included nominal measurements.  However, the
Department has generally, but not consistently, acted as though
nominal measurements were included within the scope." Remand
Results at 9.  In keeping with this observation, the Department
conceded that it "has not consistently treated all SSPC with a
nominal thickness greater than or equal to 4.75 mm regardless of
the actual thickness as within the scope in its prior
determinations." *Id.* at 11.

Thus, although its questionnaires throughout the course of
the investigation and subsequent administrative reviews required
respondents to report sales data for SSPC with a nominal
thickness of 4.75 mm, but an actual thickness of less than 4.75
mm, the Department did not always enforce this requirement. *Id.*
at 10.  For instance, during the second and fourth administrative
reviews, covering the periods from 2000-2001 and 2002-2003,
respectively, the Department permitted ASB[4] to exclude nominal
SSPC sales from its home and United States market databases.
During those reviews, the company reported, and the Department

---

[4]  ASB's predecessor, Ugine & ALZ Belgium N.V. ("Ugine"),
was a respondent to the initial investigation, and participated
in some of the earlier proceedings discussed herein.  Because
this succession of ownership has no bearing on the outcome of
this case, the court will include Ugine in its reference to ASB.

accepted, only sales of SSPC with an actual thickness of 4.75 mm

or more.  Subsequently, however, Commerce applied facts available[5]

when ASB failed to provide information on nominal SSPC sales in

the fifth administrative review.  For the Department, the very

fact of its inconsistent treatment of the 4.75 mm measurement in

its initial investigation and in subsequent reviews demonstrates

that the § 351.225(k)(1) factors do not resolve the scope

inquiry.

    Accordingly, in the Remand Results, Commerce found:

> The Department has never made an explicit finding in
> its prior determinations that the scope of its
> proceedings included nominal measurements.  However,
> the Department has generally, but not consistently,
> acted as though nominal measurements were included
> within the scope. . . . [I]n a variety of instances,
> the Department indicated to interested parties that the
> scope included nominal measurements; however, in making
> these indications, the Department did not explain the
> basis for its determinations or cite record evidence

---

[5]     Pursuant to 19 U.S.C. § 1677e(a), Commerce will use
"facts otherwise available" in reaching its determinations with
respect to "necessary information" that is unavailable or
otherwise withheld or not timely provided by a respondent in an
antidumping investigation.  In other words, if Commerce requests,
but does not receive, information it deems necessary to carrying
out its investigation or review it will use information otherwise
available from other sources, usually the petitioners.  In
connection with the fifth administrative review of the
antidumping order on SSPC, Commerce applied facts available in
determining ASB's sales of SSPC with a nominal thickness of 4.75
mm, but an actual thickness of less than 4.75 mm, because ASB did
not report its nominal sales, and Commerce deemed this
information necessary to calculate ASB's dumping margin.  *See*
Remand Results at 11.  Accordingly, the Department's
determination that information on sales of nominal SSPC was
necessary in that review is an example of the Department's
treatment of "4.75 mm" as a nominal measurement.

> upon which these finding were based. . . . [B]ecause
> the basis for these indications was not explained, it
> is difficult for these indications to serve as a
> reliable basis for an affirmative finding under 19 CFR
> 351.225(k)(1).

Remand Results at 9.

Finally, with respect to the proceedings before the
International Trade Commission ("ITC"), Commerce noted that the
ITC referred to the ASTM[6] standards in distinguishing the subject
merchandise, SSPC, from similar products, such as stainless steel
sheet and strip ("SSSS"). Commerce found, however, that the ITC
made no specific findings regarding whether SSPC dimensions were
nominal or actual. Remand Results at 11-12. Therefore, the
Department concluded that "[b]ased on the ITC Report, we are
unable to draw any conclusions that would clarify whether SSPC
with a nominal thickness of 4.75 mm, but an actual thickness of
less than 4.75 mm, is subject to the Orders." Remand Results at
12.

Having found, in accordance with the court's Remand Order,
that neither the scope language itself nor the § 351.225(k)(1)
factors were dispositive as to the meaning of the language,
Commerce turned to the *Diversified Products* factors codified in
§ 351.225(k)(2), and determined that the scope language included

---

[6] The American Society for Testing and Materials, now
known as ASTM International, is an organization that, among other
things, develops and publishes industry standards for a variety
of products, including SSPC.

SSPC with a nominal thickness of 4.75 mm, but an actual thickness

of less than 4.75mm.  In reaching its determination, the

Department found that

> SSPC is ordered to a nominal thickness, with a
> tolerance range for each nominal thickness.  The [ASTM]
> A480 Standard lists thicknesses (<u>i.e</u>, nominal
> thicknesses) and shows the permitted variations in
> thickness (<u>i.e.</u>, actual thicknesses). . . . These
> industry standards mean that plate ordered to a nominal
> thickness of 0.1875 inches (4.75 mm), subject to
> standard ASTM tolerances, can be delivered with an
> actual thickness that ranges from 4.50 mm . . . to 5.25
> mm . . . and still be within the nominal thickness of
> 4.75 mm.

Remand Results at 6-7.  Therefore, Commerce determined that "the

[antidumping duty] orders on SSPC from Belgium . . . and

[countervailing duty] orders from Belgium . . . include stainless

steel products with a nominal thickness of 4.75 mm, regardless of

actual thickness."  Remand Results at 25.


III.  Analysis

ASB challenges Commerce's finding that the scope language

itself and the § 351.225(k)(1) factors were not dispositive of

the scope inquiry.  In other words, ASB insists that either (1)

the language of the Orders is unambiguous, and that SSPC with an

actual thickness of less than 4.75 mm should be excluded from the

scope of the Orders; or (2) the § 351.225(k)(1) factors are

dispositive of the words' meaning, and that merchandise of less

than 4.75 mm should be excluded.  Under either theory, according

to ASB, reference to the *Diversified Products* analysis under

§ 351.225(k)(2) is unwarranted for purposes of determining the

scope of the Orders.


    A.  Commerce's Determination that the Scope Language is
        Ambiguous

        1.  ASB Contends that the Scope Language Unambiguously
            Defines "4.75 mm" as an Actual Number

ASB first argues that Commerce's determination that the

Orders are ambiguous is contrary to law because it failed to

interpret "4.75 mm" in accordance with its common meaning.

According to plaintiff, "4.75 mm" has a commonly understood

meaning, and if the Orders were intended to give it a less common

"industry meaning" they would have stated so explicitly.  ASB

asserts, therefore, that because qualifying language is absent

from the Orders, "4.75 mm" can only refer to an actual

measurement, and Commerce may not now change the Orders by

injecting ambiguity where none exists.  Pl.'s Cmnts. on the Dep't

of Commerce's Rem. Res. ("Pl.'s Cmnts.") 7-8.

Second, ASB claims that Commerce violated its own

regulations by considering  "customers' expectations" and

"industry practice" in reaching its finding that the language of

the Orders is ambiguous.  According to ASB, Commerce's actions

violated § 351.225(k) because the Department considered the

*Diversified Products* factors listed in subsection (k)(2) *before*

finding that the factors listed in subsection (k)(1) were not
dispositive.  In other words, plaintiff contends that the
*Diversified Products* factors may only be used to interpret
ambiguous language, not to demonstrate that the language at issue
is ambiguous.  For ASB, "[t]he consideration of the *Diversified
Products* factors as part of its analysis of the plain language of
the Orders turns the language of 19 C.F.R. § 351.225(k) on its
head . . . ."  Pl.'s Cmnts. 10.

Third, ASB argues that, even if Commerce were permitted to
look to industry meanings to determine if the scope language is
ambiguous, there is no industry meaning for "4.75 mm."  Rather,
ASB maintains, the ASTM standards define SSPC as products that
are "'4.76 mm' and/or '5 mm' or more in thickness," and
"[b]ecause 4.75 mm does not equate to 4.76 mm or 5 mm, the
Orders' use of '4.75 mm' dispositively shows that Commerce, when
adopting the scope language, did not address the Orders to an
industry standard."  Pl.'s Cmnts. 11.  Therefore, plaintiff
asserts that the use of a non-industry standard thickness
demonstrates that the Orders unambiguously defined SSPC based on
actual thickness.

Fourth, ASB submits that Commerce's ambiguity determination
is contrary to law because it fails to follow the Department's
prior usage regarding nominal versus actual measurements.  ASB
cites to Certain Cut-to-Length Carbon Steel Plate from South

Africa, 62 Fed. Reg. 61,731 (Dep't of Commerce Nov. 19, 1997) ("Carbon Steel Plate"), in which Commerce found that the term "4.75 mm or more in thickness" did not include merchandise with an actual thickness of less than 4.75 mm.  Pl.'s Cmnts. 15-16. ASB maintains that "*Commerce specifically denied the request in Carbon [Steel] Plate to amend the scope to include nominal material* because 'the original scope of the investigations did not include the products in question' and that the 'clarity of the original scope' was sufficient." Pl.'s Cmnts. 18.  ASB contends that there is no meaningful distinction between the Carbon Steel Plate orders and the SSPC Orders at issue here, and "in no way does Commerce's reasoning and decision in Carbon [Steel] Plate imply that the language '4.75 mm or more in thickness' has an industry-or product-specific meaning." Pl.'s Cmnts. 19.

    Fifth, ASB insists that the Orders are unambiguous because where Commerce has intended to include nominal measurements in the scope of an order, it has expressly done so.  ASB cites a number of examples in which Commerce has specified dimensions in scope language as either "nominal" or "nominal or actual." Pl.'s Cmnts. 20; *see, e.g., Stainless Steel Butt-Weld Pipe Fittings from the Phillipines*, 65 Fed. Reg. 81,823, 81,823-824 (Dep't of Commerce Dec. 27, 2000) (notice of final determination of sales at less than fair value).  According to plaintiff, Commerce has

never identified measurements as "actual," because "the word 'thickness,' unless otherwise modified, means 'actual thickness.'"  Pl.'s Cmnts. 20.

Moreover, ASB claims that, in the past, Commerce has been explicit when it intended to refer to the ASTM standards in defining the scope of an investigation or order.  To bolster this contention, ASB cites a number of orders that purportedly support this proposition.  Pl.'s Cmnts. 20; *see, e.g., Circular Welded Carbon quality Steel Pipe from the People's Republic of China*, 73 Fed. Reg. 42,547 (Dep't of Commerce July 22, 2008) (notice of antidumping duty order).  For ASB, "clearly Commerce knows how to invoke the ASTM when it intends to define subject merchandise using that criteria.  Its failure to invoke the ASTM standards in the language of the scopes at issue here can lead to only one conclusion – that Commerce did not intend to include the products in question."  Pl.'s Cmnts. 21.

Sixth, ASB maintains that Commerce's finding that "4.75 mm" is ambiguous conflicts with the remainder of the scope language. In describing the merchandise that is within the scope, the Orders provide that the merchandise may be further processed and remain within the scope so long as it retains the specified dimension of 4.75 mm in thickness.  Pl.'s Cmnts. 21; *see*, *e.g.*, SSPC from Belgium, Canada, Italy, the Republic of Korea, South Africa, and Taiwan, 64 Fed. Reg. 27,756 (Dep't of Commerce May

21, 1999) (antidumping duty orders) ("[t]he subject plate may
also be further processed (e.g., cold-rolled, polished, etc.)
provided that it maintains the specified dimensions of plate
following such processing . . . .") (the "further processing
clause").

        Plaintiff argues that the reference to "specified
dimensions" in the further processing clause demonstrates that
"4.75 mm" must refer to actual thickness.  According to
plaintiff, a "specified dimension" clearly refers to an actual
number and, therefore, the requirement that further processed
merchandise meet a "specified dimension" demonstrates that the
Orders define SSPC based on actual thickness.  Pl.'s Cmnts. 21-
22.  Put another way, ASB believes that nominal thickness cannot
be a "specified dimension" and, thus, the further processing
clause compels the conclusion that 4.75 mm unambiguously refers
to actual thickness.

        Seventh, ASB contends that a comparison of Commerce's SSPC
and SSSS orders demonstrates that "4.75 mm" refers to actual
thickness.  Pl.'s Cmnts. 23-24.  According to ASB, the language
in these orders mirror each other, as SSSS includes products that
are "less than 4.75 mm in thickness," and the Orders explicitly
exclude SSSS from their scope.  Pl.'s Cmnts. 23-24.  ASB
maintains that "4.75 mm" in the SSPC Orders cannot refer to
nominal thickness because the Orders would then include products

with an actual thickness of less than 4.75 mm and, therefore,

impermissibly conflict with the SSSS orders.  Pl.'s Cmnts. 23-24.

For ASB, "[a]s such, the products in question clearly fall within

the Orders' exclusion of 'sheet and strip' products and cannot be

covered on [sic] the SSPC Orders."  Pl.'s Cmnts. 24.

Finally, ASB contends that Commerce's determination that the

language is ambiguous is wrong because "4.75 mm" has an

established meaning pursuant to the Harmonized Tariff Schedule

(the "HTS") definition of SSPC.  According to ASB, that

definition is based on actual measurements, and Commerce adopted

the HTS definition in formulating the scope of the Orders.  In

keeping with this argument, plaintiff maintains that "4.75 mm or

more in thickness" "was not pulled out of the ether, it must have

come from somewhere. . . . [T]he source is the HTS."  Pl.'s

Cmnts. 12.


            2.   Defendant Argues that the Scope Language is
                 Ambiguous Because it is Unclear Whether "4.75
                 mm" is an Actual or Nominal Number

In disputing plaintiff's claims with respect to the

threshold question of ambiguity, defendant[7] first counters that it

_____

        [7]    The positions of defendant and defendant-intervenor
Allegheny Ludlum ("Allegheny") are generally consistent and they
will be treated together here under the label "defendant."
Although Allegheny believes that Commerce's Remand Results should
be affirmed in their entirety, it notes that Commerce could have
determined that the scope language referred to nominal thickness
based on its consideration of the § 351.225(k)(1) factors and,

is customary in the SSPC industry to define product thickness on

a nominal basis and, therefore, the failure of the Orders to

specify whether they refer to nominal or actual thickness renders

them ambiguous.  Def.'s Resp. to Pl.'s Cmnts. Upon the Rem. Res.

("Def.'s Resp.") 7. For defendant, ASB's argument that "4.75 mm"

is clearly an actual dimension fails to take into account that

nominal measurements may also be considered common in particular

industries.  According to defendant, "Commerce did not deprive

the number '4.75' of its common meaning, but instead recognizes

that '4.75' could be subject to different meanings, all of which

can be considered 'common,' depending upon the product and

industry in question."  Def.'s Resp. 8.

        Second, defendant asserts that ASB's argument that Commerce

unlawfully used the *Diversified Products* factors to find

ambiguity is misplaced because nothing in the regulations or

judicial precedent precludes the Department from considering

those factors in determining whether an ambiguity exists in the

first instance.  Def.'s Resp. 9-10.  Defendant insists that it

was reasonable for the Department to look at the language in

context and, thus, it was entirely proper for Commerce to

consider industry standards and practice when doing so.  Further,

the Department contends, that it was reasonable to consider

matters such as purchaser expectations and the inability to

_____

therefore, resort to the § 351.225(k)(2) factors was unnecessary.

measure SSPC thickness precisely in making its finding as to
ambiguity, notwithstanding that they are included among the
*Diversified Products* factors considered under § 351.225(k)(2) in
interpreting ambiguous language.  Def.'s Resp. 7-8.

Third, defendant argues that ASB's contention that the
measurement "4.75 mm" is not itself a standard measurement under
the ASTM is irrelevant to the issue at hand.  For defendant, the
ASTM standards guided its analysis, not because 4.75 mm is a
standard measurement, but because they demonstrate that the
industry measures "thickness" in nominal terms.  Def.'s Resp. 10.

Fourth, defendant maintains that ASB's argument that
Commerce's decision in Carbon Steel Plate is controlling of the
meaning of "4.75 mm or more in thickness" in this case is wrong.
Defendant notes that the issue in Carbon Steel Plate was whether
the order in that determination included products with a nominal
thickness of 4.7625 mm.  According to defendant, "Commerce made a
distinct finding that the scope included certain products with an
actual thickness between 4.75 mm and 4.7625 mm.  Thus certain
products made to a nominal thickness of 3/16" but produced to
slightly below 3/16" in thickness would already be included under
the language of that case."  Def.'s Resp. 11 (citations omitted).
For defendant, Carbon Steel Plate does not control here because
it was "silent as to merchandise with a nominal thickness of 4.75
mm."  Def.'s Resp. 11.

Fifth, Defendant claims that ASB's contention that it is Commerce's practice to expressly identify when the scope of an order includes nominal terms misses the point.  Rather, Defendant maintains that "[a]lthough Commerce has not been as precise and consistent as it could have been in specifying whether measurements should be considered as 'actual' or 'nominal,' those examples do not resolve the ambiguity created in this case by absence of either the word 'actual' or 'nominal.'"  Def.'s Resp. 11 (citations omitted).

Sixth, defendant responds that ASB's attempt to show that Commerce's interpretation is internally inconsistent because it ignores the further processing clause is without merit.  According to defendant, the further processing clause is not inconsistent with its interpretation of the scope language because both pertain to nominal thickness of 4.75 mm and, therefore, the term "specified dimensions" merely refers to the nominal dimensions specified in the order.  Def.'s Resp. 11-12.

Seventh, defendant argues that ASB's reliance on an alleged inconsistency between Commerce's interpretation of the Orders and the SSSS orders is meritless because "both SSPC and SSSS adhere to the same industry standards which recognize tolerance ranges and which also recognize the limited interchangeability between SSPC and SSSS due to inherent differences in thickness and appearance."  Def.'s Resp. 12.  In other words, defendant

maintains that, although the SSSS and SSPC orders are mutually

exclusive, these products are mutually exclusive based on

nominal, rather than actual, thickness.

Finally, defendant insists that ASB's argument that the HTS

definition should control is unconvincing because the Orders

indicate that "HTS categories are provided only for 'convenience

and Customs purposes,' whereas 'the written description of the

scope of [the] order is dispositive' for its meaning."  Def.'s

Resp. 10.

3.  Commerce's Ambiguity Determination is Sustained

Commerce's determination that the scope language is

ambiguous is sustained. "Commerce need only meet a low threshold

to show that it justifiably found an ambiguity in scope language,

but it is not justifiable to identify an ambiguity where none

exists." *Allegheny Bradford Corp. v. United States,* 28 CIT 830,

843, 342 F. Supp. 2d 1172, 1184 (2004) (citing *Novosteel SA v.*

*United States*, 284 F.3d 1261, 1272 (Fed. Cir. 2002)) (internal

citations omitted).  This threshold is met whenever there is

language in the orders that "specifically includes the subject

merchandise *or may be reasonably interpreted to include it*."

*Duferco,* 296 F.3d at 1089 (emphasis added).  Here, Commerce has

met this threshold because the language of the Orders can

reasonably be interpreted to include SSPC with a nominal

thickness of 4.75 mm, but an actual thickness of less than 4.75 mm.

At the outset, it should be noted that antidumping and countervailing duty orders are specific to a particular kind or class of merchandise and, therefore, unless otherwise specified, they must necessarily be interpreted in the context of the industry[8] in which the merchandise at issue is manufactured, bought and sold.  This being the case, ASB's argument that "4.75 mm" is unambiguous because it has but one common and ordinary meaning must be rejected.  In everyday parlance, "4.75 mm" may have an established meaning.  In the context of the SSPC industry, however, thickness of slightly more or slightly less than 4.75 mm is routinely acceptable to a purchaser who has

---

[8]     Courts have long recognized the importance of considering context, including industry custom, in interpreting written language.  *See, e.g., Hurst v. Lake & Co., Inc.*, 16 P.2d 627, 629 (Ore. 1932) ("[O]ne is justified in saying that the language of the dictionaries is not the only language spoken in America. . . . [T]he different sciences and trades, in addition to coining words of their own, appropriate common words and assign to them new meanings.  Thus it must be evident that one cannot understand accurately the language of such sciences and trades without knowing the peculiar meaning attached to the words which they use."); *Cabell v. Markham*, 148 F.2d 737, 739 (2d Cir. 1945) (Hand, J.) ("Of course it is true that the words used, even in their literal sense, are the primary, and ordinarily the most reliable, source of interpreting the meaning of any writing: be it a statute, a contract, or anything else.  But it is one of the surest indexes of a mature and developed jurisprudence not to make a fortress out of the dictionary; but to remember that statutes always have some purpose or object to accomplish, whose sympathetic and imaginative discovery is the surest guide to their meaning."); *Johnson v. United States*, 163 F. 30, 32 (1st Cir. 1908) (Holmes, J.).

specified product that is 4.75 mm thick.  *See* Remand Results at
7-8.  This is true for several reasons, the first being that
"stainless steel plate thickness cannot be maintained precisely
in the steel forming process."  Remand Results at 7.  Indeed, no
roll of SSPC is of uniform thickness throughout and, thus,
Customs and Border Protection measures the thinnest part of a
roll in order to classify such merchandise.  Oral Arg. Tr. at
26:15-19.

     Moreover, slight variations in thickness do not prevent SSPC
coils from being suitable for their intended purposes.  Thus, in
practice, if certain rolls of SSPC are slightly more or less than
4.75 mm in thickness, but within a tolerance range acceptable in
the industry, a purchaser of SSPC would accept it even if the
contract or purchase order called for SSPC with a thickness of
4.75 mm.  *See* Remand Results at 7-8.  Therefore, to the extent
that SSPC that actually measures something less than 4.75 mm may
nonetheless be deemed to be nominally 4.75 mm, it could
reasonably be covered by the Orders.  Because the express terms
of the Orders do not state whether this is the case, the Orders
are ambiguous.

     Further, plaintiff's contention that Commerce's Remand
Results were contrary to law because the Department violated its
own regulations by considering certain *Diversified Products*
factors, such as "customer expectations" and "industry practice,"

in determining if an ambiguity existed in the scope language is
unconvincing.  Section 351.225(k) provides for the steps Commerce
is to take in "considering whether a particular product is
included within the scope of an order . . . ."  In other words,
in the context of § 351.225(k), the *Diversified Products* factors
are applied by Commerce to resolve an ambiguity.  Nothing in
§ 351.225(k), however, prevents Commerce from considering any
factors in either subsection in determining whether an ambiguity
exists.

     Indeed, as noted above, it is reasonable for the Department
to consider industry context to determine whether the scope of
its orders are ambiguous.  Commerce's use of the *Diversified
Products* factors as a means of determining commercial usage when
evaluating whether the language was ambiguous does not cause the
Department's determination to be unlawful.  This is because the
factors are merely a tool for making a reasonable finding.
Accordingly, Commerce did not act contrary to law by considering
factors such as industry practice or customer expectations to
determine if the language in the Orders was ambiguous.

     ASB's contention that the industry practice of measuring
SSPC in nominal terms could not render the language ambiguous
because "4.75 mm" does not have an industry meaning is also
without merit.  It is true that the ASTM lists 0.1875 inches (or
3/16") as a standard thickness for SSPC, and recognizes that this

converts to the metric measurement of 4.7625 mm.  However, the

record also reflects that, although the exact metric conversion

of the standard 0.1875 inch thickness is 4.7625 mm, it is

industry custom to label the conversion as 4.75 mm.  *See* Letter

from Collier, Shannon, Rill & Scott, PLLC to Sec'y of Commerce,

dated April 14, 1998, attached as Ex. 3 to plaintiff's Rule 56.2

Mot. J. Agency R., dated July 1, 2009 ("Pl.'s July 2009 Br.").

If anything, this further supports Commerce's conclusion that the

industry practice is to define the thickness of SSPC in nominal

terms.  In addition, Commerce's purpose in citing to the ASTM

standards was to illustrate that the custom in the trade is for

SSPC to be sold with a small range of thickness, not to identify

4.75 mm as an industry standard.

   Commerce's findings in the Carbon Steel Plate[8] proceedings

---

   [8]    In Carbon Steel Plate, the petitioners sought to amend
the scope of the order to include, among other things, cut-to-
length carbon steel plate with a nominal thickness of 4.7625 mm,
but an actual thickness of less than 4.75 mm.  The Carbon Steel
Plate order covered merchandise that was, inter alia, "4.75 mm or
more in thickness."  Carbon Steel Plate, 62 Fed. Reg. 61731,
61,731-32 (Dep't of Commerce Nov. 19, 1997).  The Department
ultimately concluded that it would not amend the scope of these
orders because "[n]o information on the record indicates that
respondents or other parties have been attempting to circumvent
these proceedings by shifting to sales of the products in
question.  Consequently, given the clarity of the original scope
[among other things] we recommend that petitioners' requested
modifications to the scope not be made."  Carbon Steel Plate Memo
at 3.  In so finding, Commerce determined that the order only
included carbon steel plate with a nominal thickness of 4.7625 mm
to the extent that the actual thickness of that merchandise was
4.75 mm or more.  The court understands ASB's argument to be that
Commerce's determination in Carbon Steel Plate was tantamount to

also do not compel a different result.  The Carbon Steel Plate

determination rejected the domestic manufacturers' *request to

amend* the scope of Commerce's order to include merchandise with

an actual thickness of less than 4.75 mm.  As part of its

reasoning for not amending the order, Commerce found that there

was "no information on the record indicat[ing] that respondents

or other parties have been attempting to circumvent these

proceedings by shifting sales of the products in question.

Consequently, given the clarity of the original scope, [among

other things,] we recommend that petitioners' requested

modifications to the scope not be made."  Carbon Steel Plate Memo

at 3.

     Although, at least by implication, the Department in Carbon

Steel Plate found that "4.75 mm in thickness" was an actual

measurement that excluded merchandise with an actual thickness of

less than 4.75 mm from its scope, that finding is not a

determination that plaintiff can rely upon in this case.  It is

true, as ASB notes, that well-established principles of

administrative law prohibit Commerce from acting in an arbitrary

or capricious manner and, therefore, "[w]here . . . Commerce

adopts a practice that substantially deviates from precedent, it

must at least acknowledge the change and show that there are good

_____

a finding that "4.75 mm in thickness" meant actual thickness and,
thus, the Department cannot now find that "4.75 mm" refers to
nominal thickness in the SSPC Orders.

reasons for the new policy . . . ." *See Pakfood Pub. Co. Ltd. v. United States*, 35 CIT __, __, Slip Op. 11-6 at 14 (Jan. 18, 2011). Commerce's determination in Carbon Steel Plate, however, was not based on any long standing methodology from which the Department has substantially deviated in finding that the Orders in this proceeding are ambiguous. Rather, the determination in Carbon Steel Plate was a factual finding conditioned on the questions presented and based on the administrative record before the Department.

Carbon Steel Plate did not squarely address the question before the court in this case. That is, no argument was made that the scope language was ambiguous because of the absence of the words "actual" or "nominal." Indeed, Carbon Steel Plate did not involve a dispute over the meaning of the scope language in the order at issue at all. To the contrary, that determination involved the petitioners' request to amend the scope of the order. Furthermore, the determination was based, at least in part, on the finding that no amendment to the order was needed because there was no evidence anyone was trying to circumvent the order. *See* Carbon Steel Plate Memo at 3.

Here, Commerce has made an independent determination concerning the scope of its Orders on SSPC, based on the record before it in this proceeding, and upon the precise question of whether ambiguity arises from the presence or absence of the

words "nominal" and "actual."  So long as that conclusion is

supported by substantial evidence in the record, rulings in other

proceedings do not dictate a contrary result.  "The primary

source in making a scope ruling is the antidumping order being

applied (and the prior scope determinations applying that order),

not necessarily the scope rulings made in unrelated antidumping

orders." *Walgreen Co. Of Deerfield, Il. v. United States*, 620

F.3d 1350, 1356 (Fed. Cir. 2010).  That the Department's result

in this case may not be consistent with its conclusions in Carbon

Steel Plate, which resolved a different issue based on a

different administrative record, is not a sufficient basis to

find that its decision here is unreasonable.  *See Nakornthai*

*Strip Mill Pub. Co. Ltd. v. United States*, 32 CIT __, __, 587 F.

Supp. 2d 1303, 1307 (2008) ("Commerce . . . may adapt its views

and practices to the particular circumstances of the case at

hand, so long as the agency's decisions are explained and

supported by substantial evidence on the record.").

   Nor is the court persuaded by ASB's contentions that the

Orders must refer to actual thickness because they do not include

the term "nominal" or expressly refer to the ASTM standards.  For

ASB, it is significant that previously Commerce has used the term

"nominal" and expressly invoked those standards when it intended

to incorporate them into orders.  Neither the Department's use of

the term "nominal" nor its reference to the ASTM standards,

however, prevent the Orders from being found to be ambiguous.

The ambiguity here arises precisely because there is no reference

to the ASTM standards, inclusion of the word "nominal," or any

other indication of whether the scope of the Orders is defined in

terms of nominal or actual product thickness, even though the

product is commonly identified nominally in the industry.  Had

the Orders used the term "nominal" or expressly referred to the

ASTM standards, no ambiguity would exist.

ASB's contention that the "specified dimensions" language in

the further processing clause must refer to actual measurements,

including the "4.75 mm" in thickness, is also unavailing.  There

is no reason why "specified dimensions" cannot refer to nominal

dimensions.  Thus, if merchandise maintains a nominal thickness

of 4.75 mm following further processing then it is within the

scope of the Orders.  If further processing alters the dimensions

of the merchandise such that it can no longer be considered

nominally 4.75 mm, it is not within the scope of the Orders.

Accordingly, the wording of the further processing clause does

not demonstrate that the Orders unambiguously refer to actual, as

opposed to nominal, dimensions.

Similarly, ASB's argument regarding the SSSS antidumping

order is unpersuasive.  According to ASB, the Orders must refer

to actual thickness because the SSSS order defines SSSS as

certain steel products with a thickness of less than 4.75 mm, and

both the SSSS and SSPC orders explicitly exclude the other from

their scope.  That nominal rather than actual dimensions are used

in both orders does not mean that they are no longer mutually

exclusive.  A product that is nominally 4.75 mm thick excludes a

product with a nominal thickness of less than 4.75 mm.

Accordingly, there is no reason why the dividing line between

SSPC and SSSS cannot be a nominal, as distinct from an actual,

measure of thickness.

     Finally, the court is not persuaded by ASB's argument that

the Orders incorporate the definition of SSPC found in the HTS.

The Orders expressly provide that "[a]lthough the HTS subheadings

are provided for convenience and Customs purposes, the written

description of the merchandise subject to these orders is

dispositive." *See, e.g.*, Certain SSPC from Belgium, Canada,

Italy, the Republic of Korea, South Africa, and Taiwan, 68 Fed.

Reg. 11,520, 11,521 (Mar. 11, 2003) (notice of amended

antidumping duty orders).  Accordingly, contrary to ASB's

contention, the Orders plainly indicate that reference to the HTS

was for convenience, and was not intended to incorporate the HTS

definition of SSPC. *See Novosteel*, 284 F.3d at 1270.

     Based on the foregoing, Commerce's determination that the

Orders are ambiguous is supported by substantial evidence and

otherwise in accordance with law.  As noted, the Orders

themselves do not specify whether thickness is to be measured in

actual or nominal terms.  The administrative record before the
Department supports its finding that no roll of SSPC is
manufactured to a uniform thickness and that it is common in the
SSPC industry to refer to product thickness in nominal terms.
This industry practice supports Commerce's finding of ambiguity
because it casts a reasonable doubt upon the intended meaning of
the scope language in the Orders.  It was within the discretion
of the Department to consider that industry practice in
interpreting the scope of the Orders, as the definition of "4.75
mm or more in thickness" cannot be divorced from the context of
the relevant industry.  Therefore, where, as here, the relevant
industry generally defines product thickness in nominal terms, it
is reasonable for Commerce to conclude that the Department's
failure to specify whether "4.75 mm in thickness" was a nominal
or actual measurement rendered the Orders ambiguous.
Accordingly, Commerce's determination that the scope language in
the Orders is ambiguous is sustained.


    B.  Commerce's Finding that the § 351.225(k)(1) Factors Were
       Not Dispositive of the Scope Inquiry

      1.  Plaintiff Argues that the § 351.225(k)(1) Factors
         Dispositively Demonstrate that "4.75 mm" Refers to an
         Actual Measurement

ASB asserts that, even if the language of the Orders is
ambiguous, the § 351.225(k)(1) factors are dispositive of the
scope inquiry because they conclusively demonstrate that "4.75

mm" was intended as an actual measurement.  Therefore, plaintiff

argues, the Department's use of the *Diversified Products* factors

in § 351.225(k)(2) to find that "4.75 mm" was a nominal

measurement was unlawful because the § 351.225(k)(1) factors

conclusively demonstrate that it was intended to be an actual

measurement.  In other words, plaintiff contends that Commerce

failed to follow its own regulations by going to the third step

of the prescribed methodology, and considering the

§ 351.225(k)(2) factors when the ambiguity in the Orders could be

resolved by the § 351.225(k)(1) factors.  According to ASB,

Commerce's conclusion that the § 351.225(k)(1) factors[9] did not

dispositively show that the scope of the Orders was limited to

merchandise that is actually 4.75 mm in thickness or more is

unsupported by substantial evidence for four reasons.

    First, plaintiff argues that the petitioners in the

investigation were clear that they intended the scope of the

Orders to be defined in terms of actual thickness because they

"rejected the use of tolerance ranges" in the proceedings leading

to the formulation of the Orders' scope description.  *See* Pl.'s

Cmnts. 27-28.  In other words, ASB argues that by declining to

include tolerance ranges in the definition of SSPC in the

---

    [9]    The factors considered under 19 C.F.R. § 351.225(k)(1)
are (1) the descriptions of merchandise contained in the
petition, (2) the initial investigation, (3) Commerce's
determinations, and (4) the ITC determinations.

investigation, the petitioners sought to include only SSPC with
an actual thickness of 4.75 mm or more within the scope of the
Orders.  According to ASB, "[g]iven the necessity of defining the
subject merchandise according to tolerance ranges [in order to
describe the merchandise in nominal terms], such an omission
clearly shows that Petitioners did not intend to cover nominal
merchandise."  Pl.'s Cmnts. 28.  For plaintiff, given the
petitioners' intentions, allowing Commerce to revisit its initial
decision not to include tolerance ranges "would be tantamount to
permitting Commerce to amend the Orders years after they were
issued."  Pl.'s Cmnts. 27.

        Second, ASB argues that the petitioners' statement to the
Department regarding the further processing clause demonstrates
that the scope of the Orders was intended to be defined based on
actual thickness.  ASB relies on a letter from petitioners'
counsel in May 1998: "the scope of the investigation defines the
dimensions of the subject coiled plate products to be 254 mm or
over in width and 4.75 mm or more in thickness, without exception
or exclusion."  Pl.'s Cmnts. 28 (citing Letter from Collier,
Shannon, Rill & Scott, PLLC to Secretary of Commerce, dated May
8, 1998 (attached as Ex. 4 to Pl.'s July 2009 Br)).  Thus,
according to plaintiff, the petitioners clarified that "coiled
plate meeting *these minimum dimensions is included within the*
*scope . . . .*"  "  Pl.'s Cmnts. 28 (citing Letter from Collier,

Shannon, Rill & Scott, PLLC to Secretary of Commerce, dated May

8, 1998 (attached as Ex. 4 to Pl.'s July 2009 Br)).  For ASB,

this statement "clearly reveal[s] that the products could be

further processed and fall within the Orders so long as they

'maintain[ed] *dimensions* specified in the *Department's scope*

*language*' – not unspecified dimensions (such as the ASTM

standards)."  Pl.'s Cmnts. 29 (citations omitted).  Plaintiff,

therefore, concludes that "Petitioners' comments at the time the

scope was adopted are clearly inconsistent with interpreting

'thickness' to mean 'nominal thickness.'"  Pl.'s Cmnts. 29.

    Third, plaintiff contends that Commerce's request that ASB

and other respondents report data based on nominal thickness does

not alter the conclusion that nominal merchandise is not within

the scope of the Orders.  As noted, in its questionnaires,

Commerce required respondents to report data concerning

merchandise that was nominally 4.75 mm in thickness, but with an

actual thickness of less than 4.75 mm.  According to plaintiff,

Commerce can request data from parties either to include the data

collected in its calculation of the dumping margin, or to ensure

that Commerce "understands the data that it will use in its

calculations and that respondents have fully and accurately

reported their data."  Pl.'s Cmnts. 30.  For plaintiff, the

record demonstrates that Commerce's purpose in requiring nominal

reporting was the latter.  Specifically, ASB points to a

verification report[10] for one respondent issued in connection with the second administrative review of the Orders.  In that report, according to ASB, "[f]or products with 'an actual thickness of less than [4.75 mm]' Commerce 'verified' that the 'thickness noted on the invoices were not subject to this review.'"  Pl.'s Cmnts. 30 (citing Memorandum from Case Analysts to File re: Sales Verification of TrefilARBED, Inc., dated May 30, 2002, at 4, attached as Ex. 8 to Pl.'s July 2009 Br.).

Finally, ASB argues that the ITC's injury determination demonstrates that the Orders were only intended to cover merchandise with an actual thickness of 4.75 mm or more because "[t]he ITC Report described the different 'conditions' and 'finishes' covered by its investigation and concluded that '[a]ll plate imported in this condition or after further processing is subject to these investigations *so long as it is not further reduced below 4.75 mm in thickness.*"  Pl.'s Cmnts. 31.  For plaintiff, the ITC determination demonstrates that the scope language includes only actual thickness because it described the phrase "maintains the specified dimensions" in the further processing clause as "not further reduced below 4.75 mm."  Pl.'s Cmnts. 31.

---

[10] Plaintiff cites this evidence even though the report was not contemporaneous with the investigation.

2.  Defendant Argues that the § 351.225(k)(1)
    Factors Do Not Resolve the Ambiguity in the Scope
    Language

Defendant responds that its determination that the
§ 351.225(k)(1) factors did not resolve the ambiguity in the
scope language of the Orders is supported by substantial
evidence, notwithstanding the arguments raised by ASB.

Defendant first contends that the petitioners' arguments
against the use of tolerance ranges in the scope language is not
tantamount to a rejection of nominal measurements.  According to
defendant, the excerpt from the petitioners' correspondence cited
by ASB "makes no mention of 'actual' or 'nominal' measurements,
and clearly identifies petitioners' position that opposition to
the express inclusion of tolerance ranges as part of the scope
language is a 'separate' issue [from the question of] whether the
orders should be interpreted as meaning 'actual' or 'nominal'
measurements."  Def.'s Resp. 14.  In other words, for defendant,
the fact that the petitioners sought to exclude tolerance ranges
from the scope description is hardly the same as petitioners
seeking an order that relies on actual rather than nominal terms.

According to defendant, petitioners' arguments against the
inclusion of tolerance ranges in the scope language was based
entirely on the difficulty entailed in deciding which set of
tolerances would be used.  After noting the variety of tolerances
that might be employed, *i.e.*, the ASTM standards, specific

customer standards, etc., the petitioners commented that

"[i]ndeed identifying all tolerance uses arguably would have been

difficult if not impossible.  Rather than go down this path,

Petitioners (and the Department) reasonably declined such an

approach."  Def.'s Resp. 27 (quoting Letter from Kelley, Drye,

Collier, Shannon to Secretary of Commerce, at 13-14 (Oct. 9,

2007), attached as Ex. 14 to July 2009 Br.).

    Second, defendant counters that the petitioners'

correspondence regarding the further processing clause does not

establish their intent to include only actual measurement because

"the letter referenced by [ASB] regarding 'further processing,'.

. . merely discusses SSPC that was 'further processed,' but still

within scope, so long as it met the specified dimensions.  Again,

nothing [in petitioners' correspondence] refers to 'nominal' or

'actual' measurements."  Def.'s Resp. 14 (citations omitted).

Put another way, for defendant, the requirement that merchandise

subject to further processing maintain a "specified dimension"

after processing does not indicate whether that "specified

dimension" is defined in nominal or actual terms.

    Third, defendant maintains that ASB's contention that the

Department's requirement that data be reported on a nominal basis

was merely for purposes of "ensur[ing] that [Commerce] fully

underst[ood] the data that it will use in its calculation" does

not comport with the facts.  According to defendant, "[ASB]

downplays the reporting requirements for nominal SSPC established
in the antidumping duty investigation, . . . misstates Commerce's
intent and ignores [ASB's] own contemporaneous impression that
the 'scope . . . include[s] material with a nominal thickness of
4.75 mm or greater.'" *See* Def.'s Resp. 14-15 (citations
omitted).  According to defendant, "[i]f anything, Commerce's
reporting requirements support a conclusion under 19 C.F.R.
§ 351.225(k)(1) that Commerce understood the scope to include
[nominal SSPC]." Def.'s Resp. 15.  Defendant asserts that "[a]t
the very least, however, Commerce's statement and the reporting
practice initiated in the investigation viewed in light of its
acceptance of sales data in two reviews that excluded nominal
SSPC call into question whether the section 251.225(k)(1)
criteria are dispositive." Def.'s Resp. 15.  Stated differently,
for defendant, while its nominal reporting requirements may not
conclusively demonstrate that the Orders cover nominal SSPC, at
the very least Commerce's requirement of reporting in nominal
terms does not settle the question one way or the other.  For
defendant, this is demonstrated by plaintiff's own uncertainty as
to whether these reporting requirements meant that the Orders
referred to thickness in nominal or actual terms .

     Finally, defendant argues that the ITC's report contains no
indication as to whether the Orders included SSPC with a nominal
or actual thickness of 4.75 mm or more.  Def.'s Resp. 15.  For

defendant, because the ITC did not specifically address whether
the Orders included nominal SSPC, when addressing the further
processing clause or otherwise, the ITC's report was not
dispositive of the ambiguity found in the Orders.

### 3.   Commerce's Conclusion Regarding the § 351.225(k)(1) Factors is Supported by Substantial Evidence

The § 351.225(k)(1) factors are only dispositive if they are
"'controlling' of the scope inquiry in the sense that they
definitively answer the scope question". *See Sango Int'l v.
United States*, 484 F.3d 1371, 1379 (Fed. Cir. 2007).  That being
the case, where, as here, Commerce reaches fact-intensive
conclusions drawn from the record, its decision will only be
overturned if it is unsupported by substantial evidence. *Norsk
Hydro Canada, Inc. v. United States*, 472 F.3d 1347, 1357 (Fed.
Cir. 2006) ("Commerce's determinations of fact must be sustained
unless unsupported by substantial evidence in the record. . . .")

Based on the record before it, the Department's
determination that the § 351.225(k)(1) factors were not
dispositive of the scope issue was reasonable.  The court reaches
this conclusion after considering the four objections to
Commerce's determination posed by ASB.  First, ASB's argument
that, by declining to include specific tolerance ranges in the
scope language, the petitioners must have intended actual
measurements to control is not convincing.  The evidence

demonstrates that the petitioners' decided not to propose

specific tolerance ranges because they believed that there were

such a variety of ranges in use in the industry that specified

ranges would result in confusion.

Thus, while it is clear that the petitioners wished to

exclude particular tolerance ranges, it is equally clear that

this preference does not demonstrate that they sought Orders

expressed in actual, rather than nominal terms.  On the other

hand, petitioners' correspondence does tend to prove that nominal

thickness was the standard in the industry, and it provides some

justification for Commerce's conclusion that the Orders covered

SSPC with a nominal thickness of 4.75 mm or more in thickness,

regardless of its actual thickness.

Second, ASB's claim that the petitioners' statements, during

the initial investigation, that the further processing clause

includes SSPC that is 4.75 mm or more in thickness "without

exception or exclusion" demonstrates that the Orders were

intended to cover only actual SSPC is also unconvincing.  This

declaration did no more than restate the scope language, and,

because of the absence of the words actual or nominal, it sheds

no light on the language's meaning.  Indeed, as noted *supra*, the

further processing clause does not state whether the required

thickness, that further processed merchandise must maintain, is

actual or nominal.

Third, ASB's argues that Commerce's requirement that SSPC
sales be reported in nominal terms does not cast doubt on whether
the Orders solely included SSPC with an actual thickness of 4.75
mm.  This argument is not credible.  To support its contention,
ASB identifies one verification report for one respondent in a
review, in which Commerce allegedly indicated that the Orders did
not cover SSPC with a nominal thickness of 4.75 mm, but an actual
thickness of less than 4.75 mm.  Even if ASB's construction of
this particular verification report is accepted, Commerce's
determination that the § 351.225(k)(1) factors did not resolve
the ambiguity in the Orders is reasonable.  This is because the
Department, during the investigation and subsequent reviews, was
inconsistent in its treatment of the scope language as being in
terms of actual or nominal thickness.

For instance, in 1998, during the course of the
investigation, the Department sent letters to respondents
instructing them to report sales of products with a nominal
thickness of 4.75 mm or more.  Remand Results at 9.  In addition,
in the appendix to the questionnaires issued in the investigation
the Department indicated that it interpreted the scope
measurements to be nominal.  *Id.*  Thus, the Department's conduct
in its investigation indicates that it was treating the
measurements as nominal.

In later reviews, however, Commerce seemed to lack a clear

understanding of the scope of the Orders.  The verification

report cited by ASB is one instance in which Commerce made a

finding, contrary to its prior indications, suggesting that the

scope included only actual SSPC.  But the Department treated the

Orders as covering nominal SSPC in other instances.  For example,

"in the July 1, 2002 through June 30, 2003, antidumping duty

review of SSPC from Taiwan, the Department asked that respondents

code the thickness variables according to actual thickness and to

also include in their responses all sales of products for which

the nominal thickness is greater than or equal to 4.75 mm." *Id.*

at 9.  In addition, Commerce applied facts available to arrive at

ASB's dumping margin during the fifth administrative review

because the company had failed to report sales of nominal SSPC.

*See* Remand Results at 11.  The Department, however, declined to

apply adverse facts available[11] to ASB's failure to report nominal

sales, acknowledging that it had accepted ASB's exclusion of

nominal sales in prior reviews.  *See* Issues and Decision

Memorandum for the Final Results of the Fifth Administrative

Review of the Antidumping duty Order on SSSP from Belgium ("Fifth

Administrative Review Issues & Dec. Mem.") at 23.

    Indeed, it is not at all clear that ASB itself was not of

---

[11]  Pursuant to 19 U.S.C. § 1677e(b), in applying facts
available, the Department may use an inference adverse to a
respondent who it finds has failed to cooperate to the best of
its ability in responding to requests for information.

the view that the scope language was expressed in nominal terms.
*See* Fifth Administrative Review Issues & Dec. Mem. at 18 ("In the
Department's October 8, 1998 scope clarification letter, we
instructed Respondent to report all sales of 'products for which
the nominal thickness is greater than or equal to 4.75 mm.' . . .
The record shows that on October 14, 1998, Respondent protested
the Department's instructions to report sales of nominal SSPC.
In that letter, Respondent also acknowledged that the Department
has now redefined the 'scope to include material with a nominal
thickness of 4.75 mm or greater.'  As such, Respondent was
clearly aware of the Department's clarification of the scope to
include nominal SSPC, as well as the Department's requirement
that Respondent report sales of nominal SSPC.  Indeed, as
Respondent acknowledges, it complied with the Department's
instructions and reported sales of nominal SSPC in the
investigation.").  Thus, as least as early as 1998, ASB was aware
that it was the Department's view that the Orders were expressed
in nominal terms.

It was this type of inconsistent treatment that led the
Department to find that its own determinations were not
dispositive of the scope inquiry under § 351.225(k)(1).  As the
Department found, it "has not consistently treated all SSPC with
a nominal thickness greater than or equal to 4.75 mm regardless
of the actual thickness as within the scope in its prior

determinations." Remand Results at 11. Accordingly, the
Department's requirement that sales be reported for nominal SSPC,
together with its conduct of the investigation and the reviews
does not tend to definitively resolve the ambiguity in the
Orders.

Finally, contrary to ASB's contention, the ITC's statement,
relative to the further processing clause, that "[a]ll plate
imported in this condition or after further processing is subject
to these investigations so long as it is not further reduced
below 4.75 mm in thickness" does not undermine the reasonableness
of Commerce's determination that the § 351.225(k)(1) factors do
not resolve the ambiguity. As the Department found, the ITC's
report provides no indication as to whether the scope of the
Orders included nominal merchandise because the ITC did not
specify either nominal or actual thickness. There is nothing in
the language cited by plaintiff that suggests the ITC only
considered actual measurements.

Based on the foregoing, the court finds that the evidence
considered in accordance with § 351.225(k)(1), particularly that
having to do with Commerce's understanding of the meaning of the
scope language during the conduct of the investigation and the
various administrative proceedings, does not dispositively decide
the meaning of the scope language.

CONCLUSION

Because an ambiguity in the scope language remained following application of the first two steps of the methodology set forth in *Duferco* and *Tak Fat*, resort to the methodology's third step was in accordance with law.  As noted, plaintiff does not dispute the Department's analysis under step three. Therefore, the court finds that Commerce properly applied the three-step methodology for resolving scope inquiries in the Remand Results.  The Remand Results are sustained, and judgment will be entered accordingly.

                                        /s/ Richard K. Eaton
                                        Richard K. Eaton

Dated:    July 12, 2011
          New York, New York

UNITED STATES COURT OF INTERNATIONAL TRADE

```
_____ :
                                 :
ARCELORMITTAL STAINLESS          :
BELGIUM N.V.,                    :
                                 :
            Plaintiff,           :
                                 : Before: Richard K. Eaton, Judge
       v.                        :
                                 : Court No. 08-00434
UNITED STATES,                   :
                                 :
            Defendant,           :
                                 :
       and                       :
                                 :
ALLEGHENY LUDLUM                 :
            Def.-Int.            :
_____ :
```

<u>JUDGMENT</u>

Upon consideration of the papers and proceedings had herein, and in conformity with the court's decision in this matter, it is hereby

ORDERED that the Remand Results are sustained.  Accordingly, this case is dismissed.


                          /s/ Richard K. Eaton
                              Richard K. Eaton


Dated: July 12, 2011
       New York, New York